DAY PITNEY LLP
Dennis R. LaFiura
One Jefferson Road
Parsippany, NJ 07054-2891
dlafiura@daypitney.com
(973) 966-6300
ATTORNEYS FOR
Nominal Defendant

PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
Theodore V. Wells, Jr.
1285 Avenue of the Americas
New York, NY 10019-6064
twells@paulweiss.com
(212) 373-3000
ATTORNEYS FOR
Defendants and Nominal Defendant

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE EXXON MOBIL CORPORATION DERIVATIVE LITIGATION | No. 2:19-cv-16380-ES-SCM<br><br>Hon. Steven C. Mannion<br><br>Oral Argument:  July 22, 2020 |

## NOMINAL DEFENDANT'S AND DEFENDANTS'
## MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO
## <u>TRANSFER VENUE OR, ALTERNATIVELY, TO STAY PROCEEDINGS</u>

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...............................................................................1

RELEVANT BACKGROUND ...............................................................................3

A.    The Texas Actions and This Action Are Based on the Same Meritless Allegations. ........................................................................................................3

        1.    An Independent Board Inquiry Found These Allegations to Be Meritless. .......................................................................................3

        2.    The SEC Closed Its Investigation into These Allegations without Bringing an Enforcement Action. ...................................4

        3.    A New York Court Rejected These Allegations After Trial. .....4

B.    Over Three Years Ago, the First-Filed Securities Action Was Commenced in the Northern District of Texas. ..........................................................................6

C.    A Related Consolidated Derivative Action Was Filed First in the Northern District of Texas. ...................................................................................................8

D.    A Substantially Identical Derivative Action Was Filed in This District Four Months After the Texas Derivative Action. ...................................................9

E.    ExxonMobil's Personnel and Core Functions at Issue in This Case Are Located in the Northern District of Texas. ....................................................11

ARGUMENT ........................................................................................................13

I.    This Action Should Be Transferred to the Northern District of Texas. ........13

    A.    The Third Circuit's First-Filed Rule Warrants Transfer. ....................13

    B.    Transfer Is Also Warranted Under 28 U.S.C. § 1404(a) and the Third Circuit's Decision in *Jumara*. ..........................................................14

        1.    The Key *Jumara* Factors Overwhelmingly Favor Transfer. ....16

        2.    The Remaining *Jumara* Factors Are Neutral or Inapplicable. .22

II.    Alternatively, This Action Should Be Stayed until *Ramirez* and the Texas Derivative Action Are Resolved. ................................................................23

CONCLUSION ....................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Castrillon* v. *Wyndham Hotels & Resorts, LLC*, No. 18-cv-11392
CCC SCM, 2018 WL 5342722 (D.N.J. Oct. 26, 2018) ....................................22

*Catanese* v. *Unilever*,
774 F. Supp. 2d 684 (D.N.J. 2011) ...............................................................13, 14

*CIBC World Mkts., Inc.* v. *Deutsche Bank Sec., Inc.*,
309 F. Supp. 2d 637 (D.N.J. 2004) ...............................................................15, 17

*Clean Harbors, Inc.* v. *ACSTAR Ins. Co.*,
No. 09-cv-5175, 2010 WL 1930579 (D.N.J. May 12, 2010) ...........................24

*E.E.O.C.* v. *Univ. of Pa.*,
850 F.2d 969 (3d Cir. 1988), *aff'd*, 493 U.S. 182 (1990)...................................13

*Frato* v. *Swing Staging, Inc.*,
No. 10-cv-5198, 2011 WL 3625064 (D.N.J. Aug. 17, 2011)......................14, 15

*Hagen Constr., Inc.* v. *Whiting-Turner Contracting Co.*,
No. 1:17-cv-6969, 2018 WL 1918470 (D.N.J. Apr. 24, 2018) .........................20

*Huang* v. *Sonus Networks, Inc.*,
No. 15-cv-2407 (FLW) (LHG), 2016 WL 1090436 (D.N.J. Mar. 21, 2016) .................................................................................................................20

*Job Haines Home for the Aged* v. *Young*,
936 F. Supp. 223 (D.N.J. 1996).........................................................................1

*Jumara* v. *State Farm Insurance Co.*,
55 F.3d 873 (3d Cir. 1995) ..................................................................15, 19, 21

*Kerotest Mfg. Co.* v. *C–O–Two Fire Equip. Co.*,
189 F.2d 31 (3d Cir. 1951), *aff'd*, 342 U.S. 180 (1952)....................................23

*Landis* v. *N. Am. Co.*,
299 U.S. 248 (1936)...........................................................................................24

*Landmark Am. Ins. Co.* v. *R.T. Patterson Co., Inc.*,
   No. 2:14-cv-01111, 2014 WL 7343853 (W.D. Pa. Dec. 23, 2014)....................21

*Maximum Human Performance, Inc.* v. *Dymatize Enters., Inc.*,
   No. 09-235 (PGS), 2009 WL 2778104 (D.N.J. Aug. 27, 2009).........................16

*Miller* v. *CareMinders Home Care, Inc.*,
   No. 13-cv-5678 (JAP), 2014 WL 1779362 (D.N.J. Apr. 30, 2014)...................13

*Nottenkamper* v. *Modany*,
   No. 14-cv-672-GMS, 2015 WL 1951571 (D. Del. Apr. 29, 2015)....................22

*Novartis AG* v. *HEC Pharm Co., Ltd.*,
   No. 15-cv-1647 (CCC), 2015 WL 5440821 (D.N.J. Sept. 14, 2015)...........24, 25

*Osborne* v. *Emp. Benefits Admin. Bd. of Kraft Heinz*,
   No. 2:19-cv-00549, 2020 WL 1808270 (W.D. Pa. Apr. 9, 2020)...............19, 21

*Parks* v. *SCI-Camp Hill*,
   No. 2:18-cv-1205, 2019 WL 211099 (W.D. Pa. Jan. 16, 2019).........................22

*People of the State of New York ex rel. Letitia James* v. *Exxon Mobil Corp.*, No. 452044/2018, 2019 WL 6795771 (N.Y. Sup. Ct. Dec. 10, 2019) .................................................................................................5, 6

*Ramirez* v. *Exxon Mobil Corp.*,
   334 F. Supp. 3d 832 (N.D. Tex. 2018) ..............................................................7

*Ricoh Co., Ltd.* v. *Honeywell, Inc.*,
   817 F. Supp. 473 (D.N.J. 1993) ........................................................................17

*Samsung SDI Co., Ltd.* v. *Matsushita Elec. Indus. Co.*,
   524 F. Supp. 2d 628 (W.D. Pa. 2006)...............................................................23

*Santomenno* v. *Transamerica Life Ins. Co.*,
   No. 11-cv-736 (ES), 2012 WL 1113615 (D.N.J. Mar. 30, 2012).....................18

*Travelodge Hotels, Inc.* v. *Perry Developers, Inc.*,
   No. 11-1464 (DMC) (JAD), 2011 WL 5869602 (D.N.J. Nov. 22, 2011) .............................................................................................17, 23

*Weisler* v. *Barrows*,
   No. 06-362 GMS, 2006 WL 3201882 (D. Del. Nov. 6, 2006)....................18, 22

**STATUTES**

15 U.S.C. § 78aa ...........................................................................................15

28 U.S.C. § 1404(a) ....................................................................................1, 14

**OTHER AUTHORITIES**

Fed. R. Civ. P. 45 ........................................................................................19

Nominal defendant Exxon Mobil Corporation ("ExxonMobil") and all defendants (together with ExxonMobil, "Defendants") respectfully move for an order transferring this case to the United States District Court for the Northern District of Texas pursuant to the Third Circuit's first-filed rule and 28 U.S.C. § 1404(a) or, alternatively, staying proceedings until the first-filed related lawsuits in that district are resolved.

## PRELIMINARY STATEMENT

Defendants respectfully ask this Court to transfer this case to the Northern District of Texas, where two earlier-filed actions, which raise substantially identical legal and factual issues and involve the same parties as this case, have long been pending before the same judge. As this Court has recognized, it "is in the interests of justice to permit suits involving the same parties and issues to proceed before one court and not simultaneously before two tribunals." *Job Haines Home for the Aged* v. *Young*, 936 F. Supp. 223, 233 (D.N.J. 1996) (internal quotations & citation omitted).

Here, there is no denying that this action and the first-filed Texas cases—a putative federal securities class action filed on November 7, 2016 and a consolidated federal derivative action filed on May 2, 2019—raise substantially the same allegations and same causes of action against the same defendants. The Texas cases and this case all allege that certain current and former ExxonMobil

officers disseminated or approved allegedly false and misleading statements concerning ExxonMobil's use of "proxy costs of carbon," the profitability of its Canadian bitumen operations, its compliance with United States Securities and Exchange Commission ("SEC") regulations regarding its proved reserves, and certain of its asset impairment assessments. The striking similarity between the Texas cases and this case is so self-evident that a side-by-side comparison of complaints reveals that Plaintiffs here adopted allegations and causes of action—often word-for-word—from the first-filed Texas complaints.

Because all of these cases concern the same events, there will be substantial overlap in the documents, witnesses and legal issues relevant to these cases. Transferring this case to the Northern District of Texas, which is the center of gravity for all alleged facts related to Plaintiffs' claims, will allow all of the overlapping claims to be decided in one forum efficiently and consistently by the same judge.

In the alternative, this Court should stay proceedings until the first-filed Texas actions are resolved. A stay is required to avoid the substantial risk of inconsistent results, promote judicial economy, preserve the parties' resources, and eliminate the prejudice to Defendants from duplicative litigation.

## RELEVANT BACKGROUND

**A.    The Texas Actions and This Action Are Based on the Same Meritless Allegations.**

At their core, the Texas cases and this case all concern the same allegations that certain of ExxonMobil's public statements from March 31, 2014 through January 30, 2017 were false and misleading.  In particular, these actions all assert:

- ExxonMobil allegedly misrepresented to investors and the public that it was incorporating higher costs of greenhouse gas regulation into its business decisions than it was actually using.

- ExxonMobil purportedly failed to warn investors appropriately that certain of its proved reserves would need to be "de-booked" as of year-end 2016.

- ExxonMobil allegedly failed to recognize an impairment to certain assets at year-end 2015 and did not appropriately use projected future proxy costs of carbon and greenhouse gas ("GHG") costs in its impairment assessments.

These claims share one other thing in common:  they have already been repeatedly rejected and discredited—by the Company's board of directors (the "Board") after a robust and independent inquiry, by the SEC after its own investigation, and by the New York Supreme Court after a 12-day trial.

**1.    An Independent Board Inquiry Found These Allegations to Be Meritless.**

In response to pre-suit litigation demands sent by the plaintiffs in the Texas derivative action and this action, the Board commenced an independent, comprehensive inquiry into the merits of the allegations in these cases.  That

inquiry was spearheaded by independent outside counsel at the well-respected international law firm of Simpson Thacher & Bartlett LLP ("Simpson Thacher"). The inquiry concluded in January 2020 and found that none of the allegations had merit. The Board accordingly rejected the pre-suit demands as contrary to ExxonMobil's best interests, and Simpson Thacher informed all plaintiffs of the Board's decision. (ECF No. 53 (the "Complaint" or "Compl.") ¶ 253; Declaration of Matthew D. Stachel ("Stachel Decl."), Ex. 1.) Among others, the Texas derivative action and this action will both raise the issues of whether the Board appropriately rejected the plaintiffs' pre-suit litigation demands and whether the derivative actions should thus be dismissed with prejudice.

### 2. The SEC Closed Its Investigation into These Allegations without Bringing an Enforcement Action.

In 2016, as Plaintiffs acknowledge, the SEC commenced a related investigation into ExxonMobil's reserves reporting and asset impairment practices. (Compl. ¶ 209.) But after two years, the SEC did not identify any violation of the federal securities laws or Generally Accepted Accounting Principles. On August 2, 2018, the SEC informed ExxonMobil that it had closed its investigation. (Stachel Decl. Ex. 2.)

### 3. A New York Court Rejected These Allegations After Trial.

On October 24, 2018, the New York Attorney General filed a lawsuit against ExxonMobil in New York state court, styled *People of the State of New*

*York* v. *Exxon Mobil Corporation*, 452044/2018 (N.Y. Sup. Ct.) (the "NYAG Action"). The NYAG Action alleged that ExxonMobil violated certain New York state securities laws in connection with its representations about its use of proxy and GHG costs to manage the risks to its business posed by potential future climate policies and regulations, including in ExxonMobil's proved reserves and asset impairment assessments. (*See* Compl. ¶ 13.)

Following a 12-day bench trial, on December 10, 2019, the judge in the NYAG Action issued a lengthy post-trial decision that categorically rejected all of NYAG's claims and exonerated ExxonMobil, its officers, and employees. *See People of the State of New York ex rel. Letitia James* v. *Exxon Mobil Corp.*, No. 452044/2018, 2019 WL 6795771 (N.Y. Sup. Ct. Dec. 10, 2019) ("NYAG Decision"). In particular, the court found that:

- "[T]he Office of the Attorney General failed to prove, by a preponderance of the evidence, that ExxonMobil made any material misstatements or omissions about its practices and procedures that misled any reasonable investor." *Id.*, at *30.

- ExxonMobil's disclosures regarding proxy costs of carbon and greenhouse gas costs were "[n]ot [m]isleading." *Id.*, at *5, *11, *16–19.

- "ExxonMobil's public disclosures in its Form 10-K submissions were true and correct with respect to ExxonMobil's proved reserves." *Id.*, at *19.

- ExxonMobil did not improperly fail to recognize asset impairments. *Id.*, at *26–30.

- "The Office of the Attorney General produced no testimony either from any investor who claimed to have been misled by any disclosure, even though the Office of the Attorney General had previously represented it would call such individuals as trial witnesses." *Id.*, at *30.

- "The **testimony of all the present and former ExxonMobil employees** who were called either as adverse witnesses by the Office of the Attorney General or as defense witnesses by ExxonMobil was **uniformly favorable to ExxonMobil**." *Id.*, at *31 (emphasis added).

- "The testimony of the expert witnesses called by the Office of the Attorney General was **eviscerated** on cross-examination and by ExxonMobil's expert witnesses." *Id.* (emphasis added).

Importantly, the court also found that, far from misleading its investors and shareholders, ExxonMobil's officers and employees were "uniformly committed to rigorously discharging their duties in the most comprehensive and meticulous manner possible." *Id.*, at *21. Indeed, at the end of the trial, NYAG conceded the weakness of its own allegations when it withdrew its common law fraud claim—the only claim alleging ExxonMobil acted in bad faith—and equitable fraud claim. *Id.*, at *2–3. NYAG did not appeal.

**B.    Over Three Years Ago, the First-Filed Securities Action Was Commenced in the Northern District of Texas.**

On November 7, 2016, a federal securities action, *Ramirez* v. *Exxon Mobil Corp.*, No. 3:16-cv-03111-K (N.D. Tex.), was filed in the Northern District of Texas and assigned to Judge Ed Kinkeade. The defendants in *Ramirez* are ExxonMobil, Rex Tillerson, Andrew Swiger, David Rosenthal, and Jeffrey Woodbury.

On July 26, 2017, the lead plaintiff filed its operative consolidated complaint. (Stachel Decl. Ex. 3.) That complaint asserted claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5, 17 C.F.R. § 240.10b-5. (Stachel Decl. Ex. 3 at ¶¶ 464–478.) The complaint alleged that defendants caused ExxonMobil's stock price to be artificially inflated by disseminating or approving false and/or misleading public statements that allegedly failed to disclose information regarding ExxonMobil's use of "proxy costs of carbon," the profitability of its Canadian bitumen operations, its compliance with SEC regulations regarding its proved reserves, and certain of its asset impairment assessments. (*Id.* ¶¶ 246–376.)

Since then, proceedings in *Ramirez* advanced substantially. The parties briefed, and Judge Kinekade ruled on, the defendants' motion to dismiss. *See Ramirez* v. *Exxon Mobil Corp.*, 334 F. Supp. 3d 832 (N.D. Tex. 2018). After that ruling, the parties briefed the plaintiff's motion for class certification and engaged in related fact and expert discovery. That motion is now pending an evidentiary hearing and subsequent decision. (Stachel Decl. Ex. 4 at D.I. 117.) Shortly after the NYAG Decision was issued, the parties were ordered to mediate before former U.S. District Judge W. Royal Furgeson, Jr. (*Id.* at D.I. 118.)

**C.    A Related Consolidated Derivative Action Was Filed First in the Northern District of Texas.**

On May 2, 2019, two shareholder derivative actions were filed in the Northern District of Texas based on substantially the same disclosures and allegations that are the subject of *Ramirez*: *Von Colditz* v. *Woods*, No. 3:19-cv-01067-K (N.D. Tex.) ("*Von Colditz*") and *Montini* v. *Woods*, No. 3:19-cv-01068-K (N.D. Tex.) ("*Montini*").  Both actions were also assigned to Judge Kinkeade.  On behalf of ExxonMobil, both of the substantially identical derivative complaints asserted state law claims against certain current and former ExxonMobil directors and officers for breach of fiduciary duty, corporate waste, and unjust enrichment, as well as federal claims against the individual defendants in *Ramirez* under Sections 10(b), 21D, and 29(b) of the Exchange Act, 15 U.S.C. §§ 78j(b), 78u-4, and 78cc(b).  (Stachel Decl. Ex. 5 at ¶¶ 344–375; Stachel Decl. Ex. 6 at ¶¶ 344–375.)  The complaints alleged that the defendants were liable for their dissemination, approval, and oversight of public statements that failed to disclose information regarding ExxonMobil's use of "proxy costs of carbon," the profitability of its Canadian bitumen operations, its compliance with SEC regulations regarding its proved reserves, and certain of its asset impairment assessments.  (Stachel Decl. Ex. 5 at ¶¶ 7–18, 179–180, 275–309; Stachel Decl. Ex. 6 at ¶¶ 7–18, 179–180, 275–309.)

By order dated August 6, 2019, *Montini* and *Von Colditz* were consolidated (together, the "Texas Derivative Action") with the *Montini* complaint designated as operative. (Stachel Decl. Ex. 7 at D.I. 11.) Since then, the lead plaintiff filed a consolidated amended complaint that contained few substantive changes from the May 2019 *Montini* complaint, and an additional later-filed derivative case was added to the consolidated case. (*Id.* at D.I. 12, 34.) As in *Ramirez*, following the NYAG Decision, the parties were also ordered to mediation. (*Id.* at D.I. 32.)

### D.    A Substantially Identical Derivative Action Was Filed in This District Four Months After the Texas Derivative Action.

On August 6, 2019, plaintiff Saratoga Advantage Trust Energy & Basic Materials Portfolio filed a shareholder derivative complaint in this Court that is substantially the same as the initial *Von Colditz* and *Montini* complaints. Like those complaints, the complaint asserted—verbatim—the same five state and federal causes of action against the exact same current and former ExxonMobil directors and officers for the same alleged misconduct. (ECF No. 1 ¶¶ 241–272.) Plaintiff Saratoga substantially copied, sometimes word-for-word, the pre-consolidation *Montini* and *Von Colditz* complaints, as shown by the attached redline against the initial *Montini* complaint. (Stachel Decl. Ex. 8.) The August 6, 2019 complaint also parroted the allegations made in the operative *Ramirez*

9

complaint and repeatedly referenced *Ramirez*. (*Id.* ¶¶ 12, 15, 23–25, 33, 219, 227, 229, 231, 235, 238, 251, 259, 265.)

On December 2, 2019, plaintiff City of Birmingham Retirement and Relief System filed a shareholder derivative complaint in this Court that raised substantially similar allegations against the same defendants as the Texas cases and *Saratoga*, as well as against Mark Albers, Donald Humphreys, Michael Dolan, and Jack Williams. *See City of Birmingham Ret. & Relief Sys.* v. *Tillerson*, No. 2:19-cv-020949-BRM-SCM (D.N.J.). On March 26, 2020, *Birmingham* was consolidated into this action, and Plaintiffs identified plaintiff Saratoga's August 2019 complaint as the operative complaint. (ECF No. 50 ¶ 3.)

On April 17, 2020, Plaintiffs filed the new consolidated Complaint. (ECF No. 53.) The Complaint names the same defendants as before and reasserts claims based on the same alleged wrongdoing. The Complaint adds references to an October 2019 complaint by the Massachusetts Office of the Attorney General, but raises substantially similar allegations about the same disclosures already challenged in the NYAG Action, *Ramirez*, and the Texas Derivative Action. (Compl. ¶¶ 14–20.) Plaintiffs also alleged why they believe the Board wrongfully refused their pre-suit litigation demands, but this, again, is an issue that will ultimately be litigated in the first-filed Texas Derivative Action as well. (*Id.* ¶¶ 252–286.)

10

This is the first substantive motion to be considered by this Court.

**E.    ExxonMobil's Personnel and Core Functions at Issue in This Case Are Located in the Northern District of Texas.**

ExxonMobil is a multinational oil and gas company that, as Plaintiffs acknowledge, is headquartered in Irving, Texas in the Northern District of Texas. (Compl. ¶ 29.)  Irving is where all of ExxonMobil's officers and U.S. senior executives named as defendants are or were based, namely:  (i) CEO Darren W. Woods, (ii) former CEO Rex W. Tillerson, (iii) Principal Financial Officer Andrew P. Swiger, (iv) Principal Accounting Officer David S. Rosenthal, (v) former Vice President of Investor Relations and Secretary Jeffrey J. Woodbury, (vi) former Senior Vice President Mark W. Albers, (vii) former Principal Financial Officer Donald D. Humphreys, (viii) former Senior Vice President Michael J. Dolan, and (ix) Senior Vice President Jack P. Williams.  (Declaration of Patrice Childress ("Childress Decl."), ¶ 4.)  Irving is also where the Board of Directors and its committees principally conducted meetings at all relevant times.  (*Id.* ¶ 5.)

The three ExxonMobil business functions that relate to Plaintiffs' claims are located in Irving, Texas.  These functions are the Corporate Controllers Organization, the Corporate Strategic Planning Department, and the Investor

Relations Department.  (*Id.* ¶ 6.)  Together, these functions were responsible for the disclosures that Plaintiffs allege were materially false or misleading.

The Corporate Controllers Organization is responsible for consolidating and preparing ExxonMobil's financial statements, including preparing the public disclosures filed with the U.S. Securities and Exchange Commission, such as the Forms 10-Q and 10-K Plaintiffs challenge in their Complaint.  (*Id.* ¶ 7.)  This group accounts for nearly all of ExxonMobil's senior accounting personnel.  (*Id.*)  In addition, ExxonMobil's independent outside auditor, PricewaterhouseCoopers ("PwC"), performs its work out of ExxonMobil's Irving office.  (*Id.* ¶ 10.)

The Corporate Strategic Planning Department is responsible for developing the annual *Outlook for Energy*, which is used for ExxonMobil's annual planning and budgeting and which Plaintiffs cite repeatedly.  (*Id.* ¶ 8; Compl. ¶¶ 4, 19, 90–94, 129, 131, 135, 140, 143, 146, 158, 177, 179, 186, 188, 223–225.)

The Investor Relations Department was responsible for developing the March 31, 2014 *Energy and Carbon – Managing the Risks* report that Plaintiffs challenge.  (Childress Decl. ¶ 9; Compl. ¶¶ 3–4, 18–19, 129–130, 179, 186, 207.)

By contrast, none of the directors and officers whose conduct is at issue reside in New Jersey.  (Childress Decl. ¶ 12.)  Although ExxonMobil is incorporated in New Jersey, its employees there work in the research and

engineering technology center focused on providing research and development support to ExxonMobil's business functions, not activities related to the issues in this action.  (*Id.* ¶ 11.)

## ARGUMENT

I.    **This Action Should Be Transferred to the Northern District of Texas.**

A.    **The Third Circuit's First-Filed Rule Warrants Transfer.**

Because the Texas Derivative Action and *Ramirez* were filed in the Northern District of Texas well before this case was filed, and because all of these cases arise out of substantially the same facts, the Third Circuit's first-filed rule overwhelmingly favors the transfer of this action.

The first-filed rule is a principle of comity, requiring that "[i]n all cases of federal concurrent jurisdiction, the court which first has possession of the subject must decide it."  *E.E.O.C.* v. *Univ. of Pa.*, 850 F.2d 969, 971 (3d Cir. 1988) (internal quotations & citations omitted, alteration in original), *aff'd*, 493 U.S. 182 (1990).  The "most important consideration in a first-filed rule analysis is overlapping subject matter."  *Catanese* v. *Unilever*, 774 F. Supp. 2d 684, 687 (D.N.J. 2011) (citation omitted).  The first-filed rule is "not limited to mirror image cases."  *Miller* v. *CareMinders Home Care, Inc.*, No. 13-cv-5678 (JAP), 2014 WL 1779362, at *3 (D.N.J. Apr. 30, 2014) (internal quotations & citation omitted).  In particular, in a representative suit, like a derivative or class action, the identities of the named plaintiffs are not important if the real party in interest is the same.  *See*

13

*Catanese*, 744 F. Supp. 2d at 688 (explaining that in a class action, the classes, not the class representatives, are compared).

The substantial overlap between this action and the Texas cases cannot be denied.  This action and the Texas Derivative Action assert the exact same five causes of action against virtually the same defendants, all on behalf of ExxonMobil—the real party in interest—based on the same alleged conduct.  All of these actions allege that the defendants are liable because they disseminated, approved, or failed to appropriately supervise allegedly false and misleading statements about ExxonMobil's use of "proxy costs of carbon," the profitability of its Canadian bitumen operations, its compliance with SEC regulations regarding its proved reserves, and certain of its asset impairment assessments.

**B.    Transfer Is Also Warranted Under 28 U.S.C. § 1404(a) and the Third Circuit's Decision in *Jumara*.**

Pursuant to 28 U.S.C. § 1404(a), "a district court may transfer any civil action to any other district or division where it might have been brought" if such a transfer is "[f]or the convenience of parties and witnesses [and] in the interest of justice."

To determine if a Section 1404(a) transfer is warranted, courts in this District conduct a two-part inquiry.  The first step "is to determine whether venue would be proper in the proposed transferee district."  *Frato* v. *Swing Staging, Inc.*, No. 10-cv-5198 (ES-CLW), 2011 WL 3625064, at *3 (D.N.J. Aug. 17, 2011)

(Salas, J.) (internal quotations & citation omitted).  There is no question that venue is proper in the Northern District of Texas.  This action, insofar as it alleges federal claims under the Exchange Act, could have been brought in that district because many of the "acts" purporting to constitute a violation of the federal securities laws took place in the Northern District of Texas, and several of the Defendants reside or transact business and are subject to personal jurisdiction there.  *See CIBC World Mkts., Inc.* v. *Deutsche Bank Sec., Inc.*, 309 F. Supp. 2d 637, 648–49 (D.N.J. 2004) (finding venue proper where complaint asserted federal Exchange Act claims, citing that statute's venue provision, 15 U.S.C. § 78aa).

The second step is to apply the balancing test set forth in *Jumara* v. *State Farm Insurance Co.*, 55 F.3d 873 (3d Cir. 1995).  Under *Jumara*, courts analyze "all 'relevant public and private interests'" to determine if the transferee forum would best serve the convenience of the parties and the interests of justice. *Frato*, 2011 WL 3625064, at *2 (citation omitted).  The relevant private factors include:  (1) "plaintiff's forum preference"; (2) "defendant's preference"; (3) "whether the claim arose elsewhere"; (4) "the convenience of the parties as indicated by their relative physical and financial condition"; (5) "the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora"; and (6) "the location of books and records." *Jumara*, 55 F.3d at 879 (citations omitted).  The relevant public factors

15

include:  (1) "the enforceability of the judgment"; (2) "practical considerations that could make the trial easy, expeditious, or inexpensive"; (3) "the relative administrative difficulty in the two fora resulting from court congestion"; (4) "the local interest in deciding local controversies at home"; (5) "the public policies of the fora"; and (6) "the familiarity of the trial judge with the applicable state law in diversity cases."  *Id*. at 879–80 (citations omitted).  Courts weigh these factors "on an individualized, case-by-case basis."  *Id.* at 883 (citation omitted).

1.    **The Key *Jumara* Factors Overwhelmingly Favor Transfer.**

a.    **The Existence of Related Cases in the Northern District of Texas Strongly Favors Transfer.**

Transfer motions are routinely granted where, as here, related litigation is already pending in the transferee forum.  Courts recognize this as "a practical consideration of great importance in deciding a motion to transfer." *Maximum Human Performance, Inc.* v. *Dymatize Enters., Inc.*, No. 09-235 (PGS), 2009 WL 2778104, at *8 (D.N.J. Aug. 27, 2009) (Salas, M.J.), *report and recommendation adopted*, No. 09-235 (PGS), 2009 WL 2952034 (D.N.J. Sept. 14, 2009).  Transfer in such circumstances has numerous benefits.  "Cases can be consolidated before one judge thereby promoting judicial efficiency; pretrial discovery can be conducted in a more orderly manner; witnesses can be saved the time and expense of appearing at trial in more than one court; and duplicative

litigation . . . is avoided." *Ricoh Co., Ltd.* v. *Honeywell, Inc.*, 817 F. Supp. 473, 487 (D.N.J. 1993) (citation omitted).

There is also no reason for this District and the Northern District of Texas simultaneously to adjudicate the same claims regarding the same alleged misconduct, and risk reaching different results.  Absent a transfer, there is a real risk of duplicative or inconsistent rulings concerning common issues that would be decided under the law of two jurisdictions.  *See CIBC*, 309 F. Supp. 2d at 651 (granting transfer to "eliminate[] the possibility of inconsistent results . . . and conserve[] judicial resources") (citations omitted).

This factor is also entitled to substantial weight here because this action is purportedly brought to serve ExxonMobil's interests.  It is not in ExxonMobil's interest to litigate common issues multiple times in multiple courts.

### b.    The Northern District of Texas Is the "Center of Gravity" in This Action.

Transfer is further warranted because the Northern District of Texas is where the activities relevant to Plaintiffs' claims took place—i.e., "the 'center of gravity' of the dispute, its events, and transactions." *Travelodge Hotels, Inc.* v. *Perry Developers, Inc.*, No. 11-1464 (DMC) (JAD), 2011 WL 5869602, at *5 (D.N.J. Nov. 22, 2011) (granting transfer) (citations omitted).  "Some courts in this District have considered this factor to be the 'most critical to the Court's

analysis.'" *Santomenno* v. *Transamerica Life Ins. Co.*, No. 11-cv-736 (ES), 2012 WL 1113615, at *7 (D.N.J. Mar. 30, 2012) (Salas, J.) (citations omitted).

The relevant conduct here is centered in the Northern District of Texas. The officers and directors who are alleged to have violated federal securities laws or breached their fiduciary duties performed their duties primarily in Irving, where the officers worked and where Board and committee meetings regularly took place. (*Supra*, p. 11.) The senior managers in ExxonMobil's Corporate Controllers Organization, which is responsible for ExxonMobil's consolidated accounting, are located in Irving. (*Supra*, pp. 11–12.) And, the employees responsible for preparing and approving the statements identified in the Complaint largely performed their work in Texas. (*Id.*)

*Weisler* v. *Barrows*, No. 06-362 GMS, 2006 WL 3201882, at *3 (D. Del. Nov. 6, 2006), directly supports transfer. There, the court granted defendants' motion to transfer a shareholder derivative action alleging violations of state law and federal securities law because the company's press releases and SEC filings were "prepared, reviewed, signed and issued" based on work performed in Massachusetts by the company's accountants. *Id.* These facts "weigh[ed] heavily in the court's transfer analysis." *Id.*

Similarly, in *Gallagher* v. *Ocular Therapeutix, Inc.*, the court transferred a securities class action, explaining that for purposes of the transfer

analysis "[s]ecurities fraud claims arise in the district from which the misrepresentations and omissions originated," and finding that "the alleged misrepresentations were made at [the corporation's] Massachusetts headquarters." No. 17-cv-5011(SDW)(LDW), 2017 WL 4882488, at *4 (D.N.J. Oct. 27, 2017).

### c.    The Convenience of the Witnesses and the Location of Books and Records Factors Favor Transfer.

Due to the Northern District of Texas's close connection with the underlying events, other *Jumara* factors also favor transfer.

The "convenience of the witnesses" would be served by transferring these cases. *See Jumara*, 55 F.3d at 879. The relevant activities occurred in Texas, not in New Jersey, and the relevant party and non-party witnesses are more likely to be in Texas and within the Texas court's subpoena power. Fed. R. Civ. P. 45(c)(1)(A)-(B). Here, the relevant personnel and business functions performed their work out of ExxonMobil's offices in Texas. (*Supra*, pp. 11–12.) *See Osborne* v. *Emp. Benefits Admin. Bd. of Kraft Heinz*, No. 2:19-cv-00549, 2020 WL 1808270, at *8 (W.D. Pa. Apr. 9, 2020) (finding this factor favored transfer of derivative action where witnesses might be beyond court's subpoena power).

The "location of books and records," *Jumara*, 55 F.3d at 879, likewise supports transfer. While many of ExxonMobil's documents relevant to these cases are in electronic form, to the extent there are relevant hardcopy materials, they are more likely to be in Texas—the center of gravity of the dispute—than New Jersey.

### d. The Northern District of Texas Is Statistically Much Less Congested Than This District.

In analyzing the relative administrative difficulty in the two districts from court congestion, courts in this District look to the Federal Court Management Statistics.  *See, e.g.*, *Hagen Constr., Inc.* v. *Whiting-Turner Contracting Co.*, No. 1:17-cv-6969 (NLH/KMW), 2018 WL 1918470, at *5 (D.N.J. Apr. 24, 2018) (relying on the Federal Court Management Statistics, finding that "[a]s to the third factor of court congestion, the Court notes that in 2017, district judges in the District of New Jersey had 1040 pending cases per judge, compared to 503 in Maryland, which weighs in favor of transfer") (citation omitted); *Huang* v. *Sonus Networks, Inc.*, No. 15-cv-2407 (FLW) (LHG), 2016 WL 1090436, at *4 (D.N.J. Mar. 21, 2016) (Wolfson, J.) (finding transferee district was less congested based on these statistics).

This District is approximately twice as busy as the Northern District of Texas, which favors transfer.  In the 12-month period ending December 31, 2019, this District had 1,051 weighted filings per judgeship and a time from filing to civil trial of 46.3 months.  (Stachel Decl. Ex. 9.)  In the same period, the Northern District of Texas had only 593 weighted filings per judgeship and a time from filing to civil trial of 17.6 months.  (*Id.*)  And, during that period, each judge

in this District had approximately 2,280 pending cases, while each judge in the Northern District of Texas had only 1,341.  (*Id.*)

Transferring this action to the Northern District of Texas will not burden that district because the Texas Derivative Action and *Ramirez* are *already* proceeding there before Judge Kinkeade, who has become familiar with the subject matter of these suits over the past three years.  "[T]he advantages to any federal trial court of having all of the potential issues and 'players' in one spot, rather than two, are both strong and self-evident."  *Landmark Am. Ins. Co.* v. *R.T. Patterson Co., Inc.*, No. 2:14-cv-01111, 2014 WL 7343853, at *3 (W.D. Pa. Dec. 23, 2014).

### e. The Convenience of the Parties Favors Transfer.

The convenience of the parties "as indicated by their relative physical and financial condition" favors transfer here. *Jumara*, 55 F.3d. at 879.  Courts have recognized that the "burden imposed on [the corporation in a derivative lawsuit] by litigating substantially similar claims in two (2) separate districts would be considerable." *Osborne*, 2020 WL 1808270, at *8 (finding convenience of the parties favored transfer of derivative action) (citation omitted).  By contrast, Plaintiffs here will have a minimal burden in litigating this action in Texas because they will have "'little, if any, documentary evidence to contribute' at trial given the nature of [the derivative] suit." *Id.*, at *9 (citation omitted).

## 2. The Remaining *Jumara* Factors Are Neutral or Inapplicable.

The other factors that courts consider under *Jumara* are neutral or otherwise inapplicable. Transfer of this action is thus fully warranted.

Because this is a representative action on ExxonMobil's behalf, Plaintiff's forum preference is entitled to no deference, and is thus a neutral factor, here. *See Weisler*, 2006 WL 3201882, at *3 ("[I]n a shareholder's derivative suit, a plaintiff's choice of forum is entitled to little weight.") (citation omitted). This is especially true here, where Plaintiffs' only justification for litigating in this District is because ExxonMobil is incorporated in New Jersey. ExxonMobil's headquarters are in Irving, Texas, and courts have held that "it is a corporate entity's actual, physical location—and not its state of incorporation—that is the driving factor in the transfer analysis." *Nottenkamper* v. *Modany*, No. 14-cv-672-GMS, 2015 WL 1951571, at *3 (D. Del. Apr. 29, 2015) (citation omitted). A plaintiff's choice of forum is also irrelevant where, as here, "the operative facts that give rise to the action occur in another district." *Castrillon* v. *Wyndham Hotels & Resorts, LLC*, No. 18-cv-11392 CCC SCM, 2018 WL 5342722, at *2 (D.N.J. Oct. 26, 2018) (Mannion, M.J.) (internal quotations & citation omitted). In any event, a plaintiff's forum preference is of no moment when "the plaintiff chooses a venue outside of his home forum." *Parks* v. *SCI-Camp Hill*, No. 2:18-cv-1205, 2019 WL 211099,

at *2 (W.D. Pa. Jan. 16, 2019) (citations omitted).  Plaintiffs do not allege they are New Jersey citizens.

Other factors such as "the enforceability of the judgment," "the local interest in deciding local controversies at home," "the familiarity of the trial judge with the applicable state law in diversity cases," and "the public policies of the fora" are largely inapplicable here, where the actions involve federal claims, federal question jurisdiction, and are national in scope.  *See Samsung SDI Co., Ltd.* v. *Matsushita Elec. Indus. Co.*, 524 F. Supp. 2d 628, 631, 633 (W.D. Pa. 2006) (finding public factors "neutral here because the causes of action at issue arise under federal law").  Weighing all factors, transfer is still warranted:  "[w]hen both states have an interest in adjudicating the case, this Court has found the balance to tip in favor of the State that was found to be the center of gravity of the actions giving rise to the litigation." *Travelodge Hotels*, 2011 WL 5869602, at *7 (citation omitted).  Here, that is unequivocally Texas.

## II.   Alternatively, This Action Should Be Stayed until *Ramirez* and the Texas Derivative Action Are Resolved.

Absent a transfer, the existence of the substantively identical and first-filed Texas Derivative Action and *Ramirez* is reason enough to stay this action. The Third Circuit has long held that courts are permitted to stay a later-filed action in favor of a first-filed action to avoid duplicative litigation.  *See Kerotest Mfg. Co.* v. *C–O–Two Fire Equip. Co.*, 189 F.2d 31, 34–35 (3d Cir. 1951) (reversing district

court and remanding with direction to enter an order staying proceedings until ten days after final determination of first-filed action), *aff'd*, 342 U.S. 180 (1952); *see also Clean Harbors, Inc.* v. *ACSTAR Ins. Co.*, No. 09-cv-5175 (RBK/AMD), 2010 WL 1930579, at *6 (D.N.J. May 12, 2010) (explaining that the first-filed rule permitted the court to decide whether to stay the action).

This Court also has broad equitable discretion to stay duplicative proceedings like this one.  Under well-settled law, "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis* v. *N. Am. Co.*, 299 U.S. 248, 254–55 (1936).  Relevant factors in determining whether a stay is appropriate include (1) hardship and inequity to the moving party if the matter is not stayed; (2) potential prejudice to the non-moving party; and (3) economy of judicial resources.  *See Novartis AG* v. *HEC Pharm Co., Ltd.*, No. 15-cv-1647 (CCC), 2015 WL 5440821, at *3–4 (D.N.J. Sept. 14, 2015) (granting stay pending resolution of prior pending action pursuant to court's inherent discretion).  Each of these factors overwhelmingly favors a stay.

Defendants will undeniably suffer significant hardship by being forced to litigate the same issues in this Court that will be adjudicated in the Texas Derivative Action and *Ramirez*.  In addition to the needless waste of their resources, Defendants will face the substantial risk of inconsistent rulings from this

Court and the Northern District of Texas. *See Novartis*, 2015 WL 5440821, at *3 (granting stay, finding parties "would also be prejudiced if forced to proceed in New Jersey because they would be litigating the same issues on parallel tracks risking inconsistent determinations"). A stay will promote judicial economy because the alternative "is to have two different courts and two different District Judges simultaneously address the same . . . claims," which is "the definition of duplication and a textbook example of waste of judicial resources." *Id.*, at *4.

By contrast, staying this case will not meaningfully prejudice Plaintiffs. Plaintiffs seek to represent ExxonMobil's best interests and should litigate this action to avoid the needless waste of ExxonMobil's resources.

## CONCLUSION

For all these reasons, this action should be transferred to the Northern District of Texas or, alternatively, stayed in favor of the first-filed Texas Derivative Action and *Ramirez*. The allegations, claims, and parties in all of these actions are substantially identical, and their center of gravity is the Northern District of Texas. While Judge Kinkeade has expended substantial judicial resources in connection with the Texas Derivative Action and *Ramirez*, this action is in its infancy. Transferring, or staying, this action will ensure the same issues are decided in the same forum at the same time and promote the interests of justice.

Dated:  April 27, 2020

**DAY PITNEY LLP**

  */s/ Dennis R. LaFiura*        
Dennis R. LaFiura
Elizabeth J. Sher
1 Jefferson Road
Parsippany, NJ 07054-2891
Tel.:  (973) 966-6300
Email:  dlafiura@daypitney.com
        esher@daypitney.com

*Attorneys for Nominal Defendant*

**PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP**

  */s/ Theodore V. Wells, Jr.*      
Theodore V. Wells, Jr.
1285 Avenue of the Americas
New York, NY 10019-6064
Tel.:  (212) 373-3000
Email:  twells@paulweiss.com

*Attorneys for Defendants and Nominal Defendant*

OF COUNSEL:

Daniel J. Kramer (*pro hac vice*)
Daniel J. Toal (*pro hac vice*)
Jonathan H. Hurwitz (*pro hac vice*)
Matthew D. Stachel (*pro hac vice*)
**PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019-6064
Tel.:  (212) 373-3000
Email:  dkramer@paulweiss.com
        dtoal@paulweiss.com
        jhurwitz@paulweiss.com
        mstachel@paulweiss.com